The next matter, number 25-1428, Woonasquatucket River Watershed Council et al. versus United States Department of Agriculture et al. At this time, would counsel for the appellants please introduce himself on the record to begin? Good morning, Your Honors. I may have pleased the court, Sean Janda, for the federal government. With the court's permission, I'd like to reserve three minutes of my time for review. You may. The district court entered a broad injunction requiring five agencies to immediately resume processing funds, dispersing funds, for a variety of programs funded by two different statutes, and prohibiting those agencies from halting on a non-individualized basis any grant funds for those programs moving forward. The court entered that injunction, even though agency decisions regarding the timing of grant payments are generally not subject to review in district court under the APA. And the court enjoined a broad swath of agency conduct, even as it disclaimed any need to examine whether the relevant statutes, regulations, and grant terms governing each individual program permit such funding pauses. And the court entered a universal injunction that goes well beyond what was necessary to address plaintiff's own asserted harms. The injunction should be vacated. I'm happy to. Just to help isolate certain questions, could you just address your problem with the injunction, assuming we agreed with you that it can't be nationwide? I'm not saying we do agree with you, but let's just assume that. And assuming that you're right that the paragraph three of the injunction, and I guess, although you don't mention it, one of the sentences in paragraph four, run afoul of the Tucker Act. Assume those two things we agree with you on, not because we do, but because it will help us understand what else you're saying. What is wrong with the injunction if all of that were true? So I think the other fundamental problem with the injunction, Your Honor, is that the part in paragraph two that prohibits these agencies from implementing any non-individualized pause moving forward, I think, goes well beyond the A, the legal conclusions of the district court as to what was actually wrong here, and B, beyond the actual agency actions that plaintiffs are asserting a challenge to. And I think it might just help to give an example, because there's some ongoing compliance fighting in district court with respect to HUD, which administers one program under the IRA. My understanding is that that program has three sub-programs, and HUD has not been dispersing grant funds under one of the three sub-programs. And the reason for that, at very high levels I understand it, is that HUD sort of rejiggered how it was implementing the program, and then was not dispersing grant funds while it sort of updated the program requirements to reflect what the grantees had to do in the rejiggered program. And the plaintiffs say that that violates this injunction. And I'm not here to tell you that the court has to figure out whether what HUD's doing is legal, is permissible, as a matter of first principles, is reasonable. But I think it's really hard to understand how you can read any part of the district court's opinion and think that it provides any basis for concluding that HUD doesn't have authority with respect to one sub-program under one program, not disperse grant funds while it rejiggers the program requirements. Isn't that just taken care of by the non-individualized language in paragraph two? So I don't think so. It depends, I think, on what the court means by that language. OK, so let's say, let's have it your way. It means what you want it to mean. So if it means what do you want it to mean? I mean, I think it would best be understood, or the best practice would have been, I think, for the district court to reflect the actual agency action they thought the plaintiffs were challenging. So if that means kind of an agency-wide program, like entire agency-wide freeze. Let's say we thought that's what it meant. I think if you thought that's what it meant, then, I mean, number one, I think that would take care of some of our problems with the injunction. And I think the other thing, just the one remaining piece, which is important to get out, is that, again, when we're talking about an APA challenge, I mean, usually the relief is limited to the actual thing that was done, right? And so imagine here that you agreed with the district court, as your question first assumed, I think, that there was a broad agency-wide freeze with respect to each of these agencies. I think the court could have prohibited the agencies from relying on that previous broad agency-wide freeze. But the APA generally wouldn't permit the court to tell the agencies they can't do that kind of freeze moving forward, even with a new explanation, a new memo, a new directive, which may well sort of solve the problems that the district court sort of thought to identify in the way it thought it was reviewing. So if you imagine a very detailed HUD memo that says- I take that we read it that way. So in other words, it's not based on the freeze that was found to have been put in place. Any future freeze is also enjoined, even if it had an independently valid basis. You're saying that this could be read to plan that, too. That's not OK. So let's say we agree with you on that. With respect to the agency-wide freeze that you agree the district court concluded was implemented, do you have any problem with that being enjoined? If so, what is it? So I think we have problems on the merits. I'm happy to talk about those. But just on the injunction itself, I meant, is there a merits-based reason for the injunction to fail? Yes, so on the merits, I think the fundamental problem there is just that the district court really didn't do the work to identify the actual broad agency-wide thing they thought it was enjoining. And I think it might just be helpful to walk through where I think we agree and disagree. And of course, the agencies here paused a lot of funding at the same time. And they did that following an executive order that directed them to do that and that they were expected to comply with. And I don't doubt that word of the executive order was filtered through the agencies down to the lower-level officials in some way. But the agencies sort of distribute instructions about executive orders in a lot of different ways. Some of them are more formal. Some are more informal. Some are more categorical. Some may leave more discretion to the implementing officials. Some may be broader in scope. Some may be narrower in scope. And so I think the problem here is that all of those specific contours of how word was filtered down would go to both the reviewability of that filtering down and also the permissibility, even under the district courts. Counsel, excuse me. I mean, there were hearings here. Evidence was submitted. The district court made a finding reviewing all of that evidentiary factual material that a universal freeze is what was playing out. And you're arguing, it seems to me, that that finding by the district court was contrary to the factual record that you made. It seems to me that your factual record was actually quite limited in support of the arguments that you're now making, that some agencies were making individualized determinations. Some programs were handled differently. I don't get the sense that that factual assertion that you're now is supported by the record. Certainly, the district court didn't find it to be supported by the record. I think the record is quite limited, Your Honor, in all directions about what exactly was happening at these higher levels. I mean, we have a lot of evidence about an individual of grants or programs being frozen. I think not so much about what came in between the executive order and those individual decisions. And it really is the plaintiff's burden bringing an APA. So you're saying it was clearly erroneous to infer from what materials she had that the agency had instituted a policy of freezing everything. And I think that each agency had a agency-wide, categorical, no-discretion-left freeze. And I just don't think there's anything in the evidence before the district court that could support that with respect to all of these agencies. What about the evidence that she relied on, which is pretty interesting that all of these people freezing all these funds simultaneously. You say it could have happened lots of different ways. She said, yeah, but the one sensible way it happens for people who understand the executive to control itself is things come from the top. So that would be a natural inference. If you wanted to rebut that inference, go ahead. If you want to do it, you better, on review, be able to say we rebut it in a way that shows it was clear error to make that common-sense inference. Right, I mean, the fundamental problem with that is that we all agree that there is the executive order, which plaintiffs have just claimed any challenge to. And then the question is, again, what's in between the executive order and the individual grant decisions? And I think it, you know, we just don't. Are you saying the secretary is not in between those two things? I mean, well, there are. That's the implication you seem to be suggesting, that the secretary just stayed mum, but the lower-level people in the agency individually made judgments to follow the executive order. That seems to be the implication of what you're suggesting might have played out. Is that the idea? No, my point, Your Honor, is just that I'm sure word filtered through the many, many levels in between the president and these line-level officials. But there's just not evidence in the record about exactly how that happened. But if you think that we're wrong about this or that the district court's order with respect to that is sufficiently supported, I think that just gets you back to the relief question and an injunction that says, you know, I think you've done this broad agency freeze and you cannot apply that broad agency freeze moving forward would be the appropriate injunction in that context. And that, I think, would just be a lot more limited than the injunction we have here. And there would be a lot less, I think, for us to be fighting about at that point. And so at the least, I mean, I think the court just needs to significantly pare back the scope of the injunction. And I should say not apply it to grants in which plaintiffs themselves have an interest to comport with CASA. Can I ask you to address your claim splitting concern? I'm just trying to understand how that would make sense when it is two different actions that were, or at least two different memos that were challenged and the memo challenged in DDC was supposedly rescinded by the government and they're challenging a different memo here and they're different parties. I mean, what is your best authority that in that situation when you're challenging a different action and you've got actually non-identical parties that it's claim splitting? Yeah, I mean, so I think, excuse me, I think the parties are pretty close to identical, certainly on the plaintiff side. I mean, National Council of Nonprofits purports to be representing all of their members in the DDC case. And I think almost all of the individual plaintiffs in this case are members of the National Council of Nonprofits. Almost all, that's what I'm saying. They're not identical. Yeah, I mean, there may be one. I think it's the complaint identifies two of the individual and he says members, plaintiffs now say it's more than that. But again, I think that goes to who can get relief in the suit, which matters when you bring in the CASA principles. But just to get back to the question about sort of there being two different memos, I think Massachusetts School of Law makes clear that sort of you have a series of related transactions and your claims are all arising from that, that you really do have to bring those claims together. And here, I mean, there's two different OMB memos. They were issued, I think, less than a week apart. And the one that the plaintiffs are challenging, they challenged first in DDC, encompasses both the American Energy Executive Order and a number of other executive orders. And so I think, I mean, the freezes issue in this case or that they think are at issue in this case, I think are really a subset of what's at issue in the National Council. What was the transactions in Massachusetts School of Law? I'll be honest, I don't remember the facts. Is that contract, like a course of dealing with parties? I don't remember exactly what the transactions were. I think our point is just that- Because it's just odd to call this a transaction in a sense. These are policy judgments by the government, distinct ones. It just seems odd to say, because they took policy action A, I should also treat that as encompassing distinct policy action B. And I think, again, you have A and B, and A, I think, really is a subset of B in this case. The one that they're challenging in DDC is the one that, that memo, this court has already heard argument about in a different case, and is sort of a much broader memo that I think encompasses everything here. And I'd be interested, I mean, I don't think the plaintiffs identified sort of any program or freeze or actions that they think are at issue in this case that they think wouldn't also be governed by the broader sort of assertive freeze issue in the cases challenging the other OMB memo. But, but... I guess I would, to put it a little differently, I mean, if a governmental entity, say, passes two pieces of legislation that are related in topic, but they're still different, or there's regulations that come out, and the regulations are in somewhat similar areas, but they're not, they're also different. I'm just not aware of anything that would require plaintiffs to challenge both of those pieces of regulation, both of those statutes, or both of those new policies in the same lawsuit, just because they have some overlap. Are you aware of anything that says that? Not beyond what we've given you in our briefs,  I don't think we have anything that addresses this exact situation. I think the key thing here, though, not just that they're related, but the one really is the subset of the other. Just remind me of the timing. The OMB unleashing guidance came out when in relation to the OMB memo about federal financial assistance? It came out before. I believe the days are January 21st for the first memo, the one being challenged in this case. So with respect to the things they're trying to challenge, those are freezes that were instituted before the freeze that the second OMB memo could possibly have required, right? Again, I'm not sure exactly when each individual sort of thing was frozen in this case. I mean, this case postdated both memos, and so the facts were at the time of the complaint in this case. Again, it's sort of hard to trace back everything, but even if you don't think that's a problem with the suit, I mean, I would just point the court again to all of our arguments about, I mean, how far beyond the appropriate scope of relief this injunction goes, and how it really needs to be prepared back to, I think, on a number of different dimensions, even if you agree with the district court on the merits, and on the claim-splitting issue. If there are no further questions, thank you. Counsel, excuse me. You can, in your rebuttal time, I would like you to address the universality of the injunction issue, and whether the Supreme Court has specifically said we're not addressing that under the Administrative Procedure Act. You can deal with that in your rebuttal, if you would, please. Yes, Your Honor. Thank you. Thank you, Counsel. At this time, would Counsel for the applees please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court? Kevin Friedel for the Plaintiff Nonprofits. I do want to address some of these questions about scope of relief, and particular provisions of the order, but I think it is important, before getting there, to first just briefly be clear about what the agency actions were. Each one of the five administering agencies here, that's EPA, Interior, Agriculture, Energy, and HUD, instituted broad agency-wide policies to withhold payment and processing of open awards under these two statutes. What that actually looked like varied from agency to agency. Sometimes it was a memo, sometimes it was an email, but they did that at each one of these agencies, and I think we have actually direct evidence of that already in the record. For example, the EPA memo at page 103 to 104 of the appendix directs EPA staff to withhold this funding. We have Energy's version of sort of the same order is at page 114 of the record. Counsel, I thought the record, with respect to the Department of Energy, was actually somewhat ambiguous, that there was a suggestion that they were proceeding, and I think this is in the record, on an individualized basis. Does that matter? There seemed to be some controversy about that. Is that correct? No, I don't think that there's any controversy or any reasonable controversy that they froze this money broadly. Now, I think, Judge Lopez, your question might get at the point that after freezing this money broadly, some of the agencies began to release particular funds at an individual, on an individualized basis, after doing the analysis that they should have done in the first place. That's entirely theory, excuse me, entirely consistent, though, with our theory of the case, which is that they did essentially a freeze first, ask questions later policy. The fact that eventually some of this money unfroze is sort of irrelevant to our claims about a broad freeze that was instituted in the first place. At the time you brought the claim, was some of the money unfrozen? Yes. So are you now saying that means at the time you filed the claim, the broad freeze was no longer in place? No, I think that the policy of freeze first, ask questions later, which is essentially- Well, freeze first, ask questions later means it may no longer have been in place if they were, by that point, asking the questions. I thought what your argument was when I thought what the district court found was that we can infer that at the time the claim was filed, there was a broad freeze in place. And the fact that it may not have been perfectly complied with because some things were unfrozen doesn't disprove that. That's a very different theory than what you're arguing now. No, I don't think so, Honor. Perhaps I've misspoken. All of the IRA and IIJA funds that these agencies administered was frozen. At the time of the claim? At the time that we filed this lawsuit, certainly all of our plaintiffs' money was still frozen, significant portions of this funding was still frozen. And I thought the thing you were trying to prove was that whether or not there was perfect compliance with the policy to freeze it all, the policy to freeze it all was in place at that time. The policy to freeze all this money and only then look at particular grants, look at particular statutes, et cetera, and sort of unfreeze slowly- It may have been in place at the time of the claim. Yes. Yes. Absolutely. Okay, and so the fact that individual things were then unfrozen wouldn't be inconsistent with that policy being in place because everything that was frozen was then still being frozen subject to that policy. Exactly, Your Honor. And your funds happened to be among the things that were still frozen. Yes, among many more billions of dollars. And so to have, to the extent that the government is sort of still denying that these freeze policies were in place, that's just not consistent with any of the factual record. And I would just add, the agencies, after this order was issued, provided administrative records to us. The administrative records included sort of more of these memos and emails confirming that this happened. And each administrative record came with a certification saying, this is all the material that we considered at the time the agency decided to freeze this money. Question is for me on this theme. There is case law that suggests you can have an agency action that is not formally written down. I just, on the streets, this is actually the policy. And if I go to find where it's written down, I can't find it, but that doesn't mean it can't be an agency action because you can't just do an end run around by having a policy that's never written down. That's one possibility of what you're claiming happened here, and the various materials that you're identifying are all in service of circumstantially proving that policy existed. Another possibility is what you're saying to us is there are actual written policies that is the agency action for each agency that you're challenging. So just like there's the OMB Unleashing Guidance memo, go read it, you want to enjoy that, there's a symmetrical memo for these various agencies. Go read its text, and that's what we want to enjoy. I didn't understand you to be making that type of argument. I thought you were making a more general argument that you can infer a freeze was the policy, even though we're not saying there's a particular document that is the policy itself that we're challenging. Which of those two are you saying? Because if you're saying it's the document, then don't we have to just go read the document and see what it says? So how it worked at each agency was slightly different, but what we know, both from the materials in the record, such as the EPA memo, I mentioned other materials was received later, is that in many cases it was actually written down. I don't think you need those documents to address any of the issues raised in this appeal. But counsel, was it, because I had the same question, was it written down in the sense of there is an email for each of the agencies that is agency-wide that will, if we read it, shows the freeze was instituted? Or are the emails that you just referenced emails that are generated between lower-level officials, and so it is not agency-wide, but there's circumstantial evidence of an agency-wide freeze? When you talk about emails, what kind of emails are you talking about? So I can give you an example. There's a January 21st email from the USDA budget chief to other offices within USDA. Effective immediately per the executive order on unleashing American Energy, you are directed to stop all use of IRA and the IIJA funding. This is a broadly applied halt, and no obligations, outlays, or other loan disbursements should occur. And is there something like that for each agency? I think there is for, I think what we have already is something like that for every agency, except perhaps HUD, but for HUD, we have this sworn statement by HUD officials saying, on January 21st, we were directed in order to implement this executive order to halt basically all the IRA money that they were. But then it just gets complicated as a matter of administrative law. That's not from, that's just the budget chief. That's not the secretary, is that a final agency action? So I thought the argument that the district court found compelling and concluded was that there was an agency-level final decision of which these materials were evidence of, even if we don't have the typical thing, which is the secretary, after making it clear this is the final position of the agency, announcing the policy. Who cares? We can still deduce that that's what happened circumstantially, and there's nothing to rebut that, so that's why there's final agency action. If instead you're saying what we're challenging is the budget chief's email, that's a rather different APA claim. I don't know that this distinction ultimately matters here. In order to be final agency action, it doesn't have to come from the head of the agency. I think if the court wants to look at this email as sort of embodying the final agency action, or instead merely reflecting some sort of more ephemeral, non-written freeze policy, I think that... What do you think the district court did, since that's what we're reviewing? I think the district court, so we're talking about evidence that was not actually before the district court in some cases. I mean, the EPA memo, the energy memo were, but I think the district court looked at the evidence, some of which is circumstantial evidence, that all this money was frozen. Some of it is direct evidence in the form of the EPA memo, or the statements from agency officials to grantees saying we are freezing all IRA money. And I think the court correctly determined that that supported a factual finding that the agencies had adopted these policies. What exactly did the OMB memo say? My understanding is that it's characterized as a guidance. And when issued, it told these agencies that there could be no disbursements of funds that were contrary to the directive of the executive order, which said, it announced all these policies, which were designed to undo the so-called New Green Deal. But I gather OMB said, but if you have awards and grants that are not contrary to those policies announced in the executive order, you can go forward with those disbursements so long as OMB approves them. If that's the correct characterization of the order, I guess you would argue, well, you put all that together, that's a freeze. Nothing can go out, essentially, until OMB approves it. Is that your understanding of what the effect is? I think that's right, Your Honor. It was a freeze of a slightly different type. There are sort of two elements of that memo that I think are important. One is the directive. Agencies are required to freeze this money. So an order from OMB to freeze it. And then second is this point that you were just describing, Judge Lopez, that OMB sort of established itself as the gatekeeper of this money, or put themselves in the role of a central bottleneck here, that money could not go out without their approval. And then that reading, that understanding of the memo, is confirmed by significant evidence that was before the district court. The OMB's fingerprints are all over the record on appeal here. You have page 103, EPA is saying, we're issuing this memo on instructions from OMB. Page 106, it's an email from them to grantees saying, we're working with OMB to implement this freeze. Page 108 is an email from someone at Interior saying, hey, for information about this funding freeze we're doing, look at this OMB memo, and so on. But in addition to enjoining the memo and seeking the enjoining of the memo, you also wanted to enjoin the agency-level freezes, which I thought you were arguing were broader even than the memo. I think that they were, yes. And I think that it's important that we seek relief as to sort of both sets of defendants, the administering agencies and the OMB defendants, because there's the potential that we could seek and win, you know, a stay of the agency-wide freeze policies, and yet maybe the government would say, oh, well, money still can't go out because OMB is not issuing, you know, it can't go out until OMB issues its approval. So there are separate agency actions that we're sort of working hand-in-glove to keep this money held up. But the agency-wide freezes, you were not suggesting, I thought the district court didn't find that the agency-wide freezes were just coterminous with the terms of the OMB memo. They were broader than that. No, they were not, Your Honor. Right, so those are just separate, five separate agency actions, which were the agency-wide freezes. Yes, that's right, that's right. But our plaintiffs were being harmed by both of these sets of actions, because, again, you have OMB telling the agencies to freeze at least some portion of this money, and also saying nothing goes out without our say-so. I don't know if my other panelists have other questions on this, but just turning to the language of the injunction then. Absolutely. Before you get to Judge Lopez's question about costs, and, well, I don't know, he didn't ask it of you, but we'll ask it of you. On that paragraph two of the injunction, you heard what the government said about how it's overbroad, because, let's set aside what non-individualized means. Let's say we construe non-individualized in a way that would account for the concern they raised. Unless that troubles you, I'm not sure it should, particularly. But they say this, as written, would seem to preclude a categorical freeze, even if the categorical freeze was based on some other ground than has been alleged as the ground for this freeze. And what justifies that? What's your answer to that? So I think it is important to look at this order as an exercise of the district court's authority under the APA to issue relief under section 705. And I think primarily what the order does is to stay or preliminarily set aside these various freeze orders. In other words, deprive them of- Primarily it enjoins another actor from taking action. It doesn't set aside anything. I think that the court, you know, it cited 705 in the order, and I think perhaps it intended it sort of as a preliminary injunction and a relief under the- May I misread? The order is they are subject to a preliminary injunction, and they are enjoined from doing things. It doesn't set aside anything. Your Honor, I think that there is, you know, this issue was briefed and decided before the Supreme Court's decision in CASA. And I think there's- Maybe they could be corrected, but put this aside for a second. Assuming this is an injunction, okay? Not a set aside order. As an injunction, what is your answer to the government's concern about paragraph two? Well, I think that it is supported by our lack of statutory authority argument for one, there's no reason. You know, the district court found that the agencies lacked authority to institute these broad freezes. And so I think that would justify the same relief as to, you know, the agency essentially doing the same policy on a new piece of paper. They wouldn't have any more statutory authority to take that second action than they did the first time. You know, however much reasoning that they offered. I also think the district court, although it didn't really expand on this in its decision, found that in terms of arbitrary and capriciousness, that this was a substantively unreasonable action. And I think that would also apply just as much to, you know, again, just the same broad freeze being reinstituted again. I did want to return to 705, but Your Honor, it looks like you may have- Just a quick account. The, I guess you could characterize the language of paragraph two of the order as prohibitory language. The language of paragraph three seems to be mandatory language. It's ordering that something be done. What is, in terms of consequence as a result of the prohibitory language of paragraph two, there's no difference in effect, isn't there, between paragraph two and three? If you're enjoined from freezing, holding, or pausing, you have to issue the money. Isn't that correct? I think that that's right. We understand- But does that matter, that difference between the prohibitory language and the mandatory language? I think that this point may matter for the Tucker Act arguments. So we agree with what I think Your Honor's suggesting, that section three doesn't really expand the scope of substantive relief that's already ordered here. We understand it as sort of underscoring the consequences and the meaning of what the court has already done. It's not actually an order that this money on these grants has to continue flowing forever. And we know that because EPA, after this order was issued, terminated hundreds of covered open awards, and the district court made clear that that did not violate her order. And of course, the order expressly allows for proceeding on a valid, individualized basis with respect to grants. But this language says that you have to release the awarded funds in three. Yes, Your Honor. But I think what that means is, in other words, stop giving effect to the freeze policy. You would potentially be in contempt if you don't release the funds. In the prior one, you're just in contempt if you continue to have the policy. I thought that was the effect of the NIH decision by the court, to distinguish between those two circumstances. I think it means that you would be in trouble if you're continuing to implement the particular freeze policies that the court had just found were likely unlawful, but not that this money has to go out the door. If you can prove, for paragraph two, I'm in violation of if you can prove that I still have the policy in place. For paragraph three, you're in violation of it if you have not released funds. Just period. There's just no defense. Did you release the funds? Yes or no? And I'm in violation of it if I didn't release them, right? If that, so I agree that the language could be read that way, but I think we know that it doesn't mean that because of this EPA termination that we were just discussing, that in fact, some of the defendant agencies did not continue to release funds by just terminating the awards. It was not, in other words, in order that this money had to keep flowing no matter what. It was just underscoring that I have enjoined, and we think preliminarily set aside or stayed these freeze policies. I guess another way to ask is do you care if three stays, if two stays? I think that the, so as I said, I don't think it changes the substantive scope of relief. I do, however, think it's served an important purpose in this litigation in that, again, it emphasizes the consequences of the stay that the court issued and made clear what has to flow from that. In a perfect world, would it be necessary to give that sort of prompting to the federal government? No, but in fact, we know that there often are sort of compliance issues, and as it turned out to be the case here on the district court docket, you can see weeks of status reports and status conferences after the court issued this order where DOJ had to explain sort of where they were in actually implementing the order. And I think the court should be cautious about a ruling that would sort of remove that tool from district courts to be able to appropriately emphasize the consequences of their orders. And I think- Do you want to just address the CASA? Yeah. Issue the nationwide aspect of this, and after CASA, how can this be nationwide given that there's no finding of a need for complete relief? So I think I would say two things to that. We think that the order can be affirmed simply under 705, that we asked for relief under 705. The parties briefed the scope of relief under 705. The district court addressed those arguments in its opinion and then in its order specifically referenced 705. So I think the fact that this was issued before CASA and before some of the, when at a time when the distinction between 705 relief and preliminary injunctions didn't necessarily have quite the same significance that it has since taken on, we think the court clearly intended to order relief both in the form of a preliminary injunction and under the APA. And if the court agrees with us on that, then I think it's entirely appropriate that this relief be directed at the agency actions and sort of necessarily not be party specific as is often the case for APA remedies. If you don't agree with us on that and think that this has to be a preliminary injunction, I think the most appropriate course would be to affirm this order, but remand for further findings from the district court on the appropriate scope of relief as has been done in other post-CASA cases. How would we justify affirming it in that interim basis? I'm sorry? How would we justify affirming it in that interim basis? Oh, I see, keeping it in place. Well, I think you could affirm sort of the court's finding on things like likelihood of success on the merits. Exactly, yes. Even if we said the injunction itself has to terminate, all the grounds we could identify as, if it was correct, we'd say all those grounds and maybe 705 would allow us that aside. On remand, that can be addressed. You're just saying we should remand for scope of relief issues. Exactly, and otherwise affirm so that we can at least have resolution on those issues. Well, wait a second. Are you saying we should, do we vacate in the interim? Because there's a difference between vacating and remanding and remanding. No, I don't think you'd have to vacate anything. Right, and that's why I'm not understanding. Why wouldn't we have to vacate under CASA if we treated this as a preliminary injunction? I think it would just be, I think it would be a remand for the district court to resolve this issue in the first place. And why in the interim should they be subject to the injunction given CASA? That's my question. Well, I think CASA itself does something very similar. You know, it granted the stay, but to a degree to be determined by the lower courts in the interim. You know, if there had been no interlocutory appeal here and CASA came out, presumably DOJ would have sought to modify the scope of the preliminary injunction by filing like a motion for reconsideration or something like that. The mere filing of that wouldn't make the relief disappear. You know, it would remain in place while the district court was resolving that issue. And I think just the accident of this kind of coming up in interlocutory appeal shouldn't change the results that those protections remain in place, which, you know, I don't want to lose sight of the fact that they're- Are you saying that you could seek a, you could seek a set aside order right now while this is with us? Is there anything stopping you from doing that? Moving in district court under 705 specifically. That's not something that I had contemplated. I think perhaps we could, proceedings in district court are largely stayed at this point, but I think that perhaps a cleaner way of resolving it would be for the court to sort of remand with the instructions to address these questions. While the appeal's pending? You could do it that way. Because you can modify an injunction while the appeal's pending, can't you? Yes. I would just emphasize, perhaps Ben was not with us on this, but we think that because these 705 issues were briefed and clearly raised in the district court that the court could also simply just affirm on 705 grounds. In other words, to find whatever the answer to these questions on sort of scope of preliminary injunctions after CASA, the district court was invoking APA authorities that are properly directed at the agency actions. The freeze orders here are not limited in scope to which CASA does not apply as the court's decision in CASA made clear, and just affirm on that basis. Thank you. Thank you. At this time, would counsel for the appellants please reintroduce himself on the record? He has a three minute rebuttal. Thank you, Sean Janda for the federal government. I'd like to start with the CASA question, Judge Lopez. So I think for sure it is true that the Supreme Court didn't say anything in CASA about the appropriate scope of relief, either preliminarily or sort of at final judgment under 705 or 706 of the APA. I'm sure this court will have occasion to address those questions in some case, but I don't think this is the one because the order in this case just doesn't look anything like a 705 stay, a 706 set aside. It's an injunction sort of left, front and center, right? Like every piece of it operates on the agency defendants, tells them they have to do certain things, they cannot do other things. It's subject, I think to enforcement or district court thinks it's subject to enforcement, potentially by contempt. I mean, none of those things are things that you would see in a 705. Let's say we thought all of that's true. We don't just churn out these opinions the next day. So there's gonna be some lag time between when this argument ends and when any decision would issue. The district court granted all this relief pre-CASA and pre-NIH. So is there any reason for you two not to be going back to the district court in light of these new developments to ask her what relief district court would like now to order? I mean, it's her injunction. She has discretion whether to join or set aside or stay, whatever relief she thinks is appropriate after reading all the precedents. Is there some reason while the case is a pending not to allow that to happen? And if it changes materially what's in front of us, then so be it. I mean, a couple of things, Your Honor. Number one, I'm not actually sure that the district court has jurisdiction to modify the injunction while we've appealed the injunction. But we could give it that. You could. Is there any reason why we shouldn't do that given the unusual circumstance we're confronting here, which is that we've got an injunction that was issued based on a different understanding of the law than now exists. And isn't your opposing counsel right that that's essentially what happened to a lot of the birthright cases as the district courts or several of the birthright cases, including in our circuit that the district courts went and in light of the Supreme Court's instruction, figured out whether they thought that a nationwide injunction was necessary to provide complete relief to the parties before them in that case? Yes, and I think there are two wrinkles with that. One of which is that some of the plaintiffs in those cases had arguments that nationwide relief was necessary for complete relief. I just don't think there's any argument like that here. And the other thing is that the Supreme Court was acting in a stay posture. And so the court may have more wiggle room in the stay posture to stay parts of the order and let the district court do more in this posture. You didn't seek a stay. Right, right. I'm not saying. It's because you didn't seek a stay. What I'm asking is we have an appeal. Typically we don't just the next day bang out the decision in the appeal. So there's gonna be time. During that time while we're figuring out how to write the opinion, is there any reason not to give jurisdiction back to the district court to address some of these issues? Because it's not obvious that the injunction that's in place is an injunction that if asked, the district court would think still should stand. No, I mean, we haven't asked for that. I don't think there's anything that would prevent the court from doing it. Do you have any problem with us doing that? I don't think so. And I think the court would need to send jurisdiction back for the district to be able to do that. But to the extent the court doesn't do that, I would just say, I'm not trying to repeat the arguments I made earlier, but I do think that the problems with the injunction go beyond the CASA problem to the Tucker Act problem and to the problem in how you interpret the paragraph two sort of moving forward. Thank you. Thank you, counsel. That concludes argument in this case.